Scott N. Orona (129594)
Ahren A. Tiller (250608)
Brett F. Bodie (264452)
Bankruptcy Law Center, APC
16133 Ventura Blvd., Ste 700
Encino, CA 91436
Ph:(800) 492-4033
Attorneys for Debtor
JULIE KIM ROBINSON

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE KIM ROBINSON,<br><br>    Debtor / Movant,<br><br>vs.<br><br>GLOBAL CITY GROUP, LLC, dba "MoneyNow 321"<br><br>    Respondent, | CASE NO.: 1:14-bk-11381-AA<br><br>**MOTION FOR CONTEMPT AND SANCTIONS AGAINST GLOBAL CITY GROUP LLC dba "MoneyNow 321" FOR VIOLATION OF THE AUTOMATIC STAY AND DISCHARGE INJUNCTION**<br><br>**Hearing Info**<br>**Date:** Nov 12th, 2014<br>**Time:** 10:30 AM<br>**Location:** 21041 Burbank Blvd Woodland Hills, CA 91367<br>**Ctrm:** 303<br>**Judge:** Hon. Alan M. Ahart |

JULIE KIM ROBINSON, (hereinafter referred to as "Debtor") by and through her counsel of record, hereby moves this court for an Order for Contempt, an award of Damages and Sanctions consisting of injunctive relief, monetary relief, attorneys fees and costs pursuant to 11 U.S.C §362, §524 and 11 U.S.C. §105 against GLOBAL CITY GROUP, LLC, dba "MoneyNow 321", (hereinafter referred to as "Respondent") for violating the automatic stay, and subsequently the discharge injunction.  This motion is based on good cause, the Memorandum of Points and Authorities in supoort, and Declarations of the Debtor and her Counsel filed hereto.

## SUMMARY

Since filing bankruptcy, the Debtor has received repeated harassing phone calls from employees of the Respondent. The Respondent was included in the Debtor's bankruptcy schedules and formally noticed of the case on March 27, 2014. The Debtor and her Counsel have taken multiple steps to make Respondent actually aware of the bankruptcy case including phone calls, faxes, letters, and emails. Despite multiple employees of the Respondent acknowledging the Debtor's bankruptcy, the Respondent has continued to harass and demand payment from Debtor including by repeatedly calling her employer. To date, the calls have not ceased.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### STATEMENT OF FACTS

On March 18, 2014, the Debtor filed a Chapter 7 bankruptcy petition in the Central District of California, case number 1:14-bk-11381-AA. The Debtor was facing a pending garnishment and the case was filed as an emergency skeletal petition. At the time of the skeletal filing, the Debtor had inadvertently omitted MoneyNow321 from the creditor matrix.

On March 19, 2014, the Debtor received a series of collection calls from MoneyNow321 on her cellular phone and at work. The Debtor spoke to a representative named Cheryl and explained she had filed bankruptcy, but Cheryl was not dissuaded from collecting and continued to demand payment. The Debtor also explained to Cheryl that she was calling the Debtor's place of employment, but Cheryl was similarly not concerned. Following the series of calls to her cellular phone and workplace, the Debtor contacted her attorney to inform him of the calls (See Attached Declaration of Debtor and EXHIBIT F – CALL LOG attached hereto).

On March 19, 2014, the Debtor's Attorney placed an outbound call to MoneyNow321 and left a voicemail informing them of the Debtor's bankruptcy filing and providing the case number, chapter, and court where the case was filed (See Attached Declaration of Attorney).

On March 21, 2014, the Debtor received a series of calls from MoneyNow321 at her workplace and on her cellular phone.  She again spoke to the representative named Cheryl and again the Debtor informed Cheryl of her bankruptcy filing and requested that the calls stop.  Cheryl ignored the bankruptcy information and continued to call and demand payment.  The Debtor contacted her attorney to relay the information about the calls (See Attached Declaration of Debtor and EXHIBIT F – CALL LOG attached hereto).

On March 21, 2014, the Debtor's Attorney called MoneyNow321 again and reached a voicemail recording and left another message providing the bankruptcy information for the Debtor and demanding all calls cease.  The Debtor's attorney then drafted an e-mail to customerservice@moneynow321.com, which is listed on the MoneyNow321 website under "Contact Us."  In the e-mail the Debtor's Attorney provided the Debtor's bankruptcy case number and attached a copy of the Notice of Bankruptcy Filing and explained that the continued calls were an ongoing violation of the automatic stay and must cease.  A copy of the e-mail is attached hereto as EXHIBIT B.  The Debtor's Attorney additionally sent a facsimile to MoneyNow321 at (305) 704-8948, which is listed on the MoneyNow321 website under "Contact Us."  The facsimile included the same information as the e-mail and a copy of the Notice of Bankruptcy Filing.  A copy of the facsimile confirmation is attached hereto as EXHIBIT C.  See also Attached Declaration of Attorney.

On March 24, 2014, the Debtor again received multiple calls from MoneyNow321 on her cellular phone and at her workplace.  The Debtor spoke to a MoneyNow321 representative who called her workplace and she hung up when she realized they were continuing to call her.  The Debtor spoke to her attorney about the continued calls (See Attached Declaration of Debtor and EXHIBIT F – CALL LOG attached hereto). That same day, the Debtor's Attorney called MoneyNow321 and spoke to a female representative who explained that the Debtor's account with MoneyNow321 did show that the Debtor was in bankruptcy.  The representative explained that the Debtor's phone number had inadvertently been left in the auto-dialer despite the bankruptcy update, when it should have been removed.  The representative apologized for the error and assured the Debtor's Attorney that she was removing the Debtor from the auto-dialer

and that this would finally resolve the problem (See Attached Declaration of Attorney). Later that same day, despite the assurances from the MoneyNow321 representative that the problem was now rectified and the calls would cease, the Debtor nevertheless received another series of repeated, harassing phone calls on her cellular phone and at her workplace (See Attached Declaration of Debtor and EXHIBIT F – CALL LOG attached hereto).

On the evening of March 24, 2014, the Debtor and her Attorney met and they reviewed and signed the balance of the bankruptcy schedules and forms that had not yet been filed with the initial emergency/skeletal filing on March 18, 2014. During this meeting, MoneyNow321 was added to schedule F and an amendment to the creditor matrix adding MoneyNow321 was completed and signed. On March 27, 2014, the balance of schedules and forms and the amendment to the creditor matrix was filed and served (See EXHIBIT A – Amendment and See Attached Declaration of Attorney).

For a brief period after March 24, 2014, the calls from MoneyNow321 ceased. The Debtor and her Attorney believed the issue had finally been rectified. Unfortunately, that was not the case, and on April 10, 2014, the Debtor again received a series of harassing phone calls from MoneyNow321 representatives on her cellular phone. The Debtor informed her Attorney of these calls. On April 24, 2014, the same pattern occurred and the Debtor received a series of repeated calls from MoneyNow321 representatives on her cellular phone and place of work. The Debtor explained to the representatives who called that she had filed bankruptcy and they had to cease the calls. She also explained they were calling her work phone and that this was unlawful. Neither explanation dissuaded the representatives from demanding payment (See Attached Declaration of Debtor and EXHIBIT F – CALL LOG attached hereto). The Debtor informed her attorney by phone of the additional calls.

On May 6, 2014, the Debtor again received repeated calls both on her cellular phone and at her workplace from MoneyNow321 representatives. The Debtor again informed the MoneyNow321 representatives that she had filed bankruptcy and then hung up. Nevertheless, the repeated calls continued. The Debtor was distressed and was fearful she would be fired and contacted her attorney's office to discuss the continued calls by MoneyNow321. The Debtor

1  discussed the situation in depth with attorney Ahren Tiller (See Attached Declaration of Debtor
2  and EXHIBIT F – CALL LOG attached hereto).  On May 7, 2014, the Debtor's Attorney sent a
3  letter to MoneyNow321 again warning them that their ongoing conduct was a violation of the
4  automatic stay (a copy of the letter is attached hereto as EXHIBIT F).

5  From the period of June 3, 2014 through June 6, 2014, the Debtor received another series
6  of repeated calls on her cellular phone and at her workplace from MoneyNow321
7  representatives.  She answered one of the calls to verify it was MoneyNow321 and then hung up
8  immediately after the representative identified himself.  She then contacted her attorney and
9  emailed him screenshots from her cellular phone showing the repeated calls (See attached
10 EXHIBIT G – cell phone call screenshots).

11 On June 6, 2014, the Debtor's attorney called the number on the cell phone screenshots
12 (561-692-7954) and spoke with a representative of MoneyNow321.  The Debtor's attorney
13 again explained that the Debtor was in a bankruptcy case and that MoneyNow321 had been
14 repeatedly violating the automatic stay by continuing to contact her.  The representative of
15 MoneyNow321 stated he had to transfer the call to the "correct party" and placed the Debtor's
16 Attorney on an extended hold.  After an extended hold, the representative came back on the line
17 and stated that he was unable to complete the transfer at this time.  He took down a phone
18 number and stated "they" would call back.  No call was ever returned by any MoneyNow321
19 representative (See attached declaration of Attorney in support).

20 Since June 6, 2014, the Debtor has continued to receive repeated calls from
21 MoneyNow321 representatives on a regular basis.  The calls are harassing, demand payment,
22 and the agents express complete disregard for the Debtor's bankruptcy filing.  The calls have
23 caused the Debtor significant stress over concern she will be fired if her employer finds out that
24 her financial issues are causing repeated collection calls to her workplace.  She is afraid every
25 day to go to lunch, use the restroom, or do anything that requires her to leave her desk as she
26 fears she will miss a series of MoneyNow321 calls that would get through to her employer.  A
27 significant portion of her workday is spent deflecting calls from MoneyNow321 made to her
28 place of employment (See Attached Declaration of Debtor).

1 .

## II.

## LEGAL ANALYSIS

**A.  JURISDICTION AND VENUE:**

This Court has subject matter jurisdiction to hear this matter pursuant to 11 U.S.C. §301, 11 U.S.C. §524 and 28 U.S.C. §157(b)(1), (2)(O), respectively. This matter is a core proceeding under 28 U.S.C. §157 and therefore the Bankruptcy Court has jurisdiction to enter a final order. It is a core proceeding because the Debtor is asserting his rights created under 11 U.S.C. §524 and 11 U.S.C. §105.

The underlying bankruptcy case was filed in the Central District of California Bankruptcy Court, therefore Venue lies in this District pursuant to 28 U.S.C. §139 1(b).

**B.   RESPONDENTS WILLFULLY VIOLATED BOTH AUTOMATIC STAY AND LATER THE DISCHARGE ORDER PURSUANT TO 11 U.S.C §362 and §524 RESPECTIVELY**

In a chapter 7 case, upon filing, 11 U.S.C. §362(a)(6) operates as a stay of, "any act to collect, assess or recovery a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. §362(k) provides that in the event of any willful violation of the automatic stay, the Debtor is entitled to recovery of, "actual damages, including costs and attorneys' fees, and, in appropriate circumstances … punitive damages." The "willfulness" requirement found in §362(k) requires the Court find, "that: (1) the party knew of the automatic stay; and (2) the party's actions that violated the stay were intentional … it is irrelevant whether the party exhibited bad faith or had a subjective intent to violate the stay" (*In re Granados,* 503 B.R 726 at 733 (9th Cir. BAP, 2013).

Upon the entry of the discharge order, the discharge injunction provided by 11 U.S.C. §524(a) operates as an injunction against "... an act to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived..." 11 U.S.C. 542(a.). A discharge under §727 discharges a debtor from all prepetition debts, except for those listed in 11 U.S.C. §523. *Hessinger & Assocs. v. U.S. Tr. (In re Biggar),* 110 F.3d 685, 687 (9th Cir. 1997). Section §524(a) may be enforced through the Court's contempt powers

under §105(a). *Renwick v. Bennett (In re Bennett),* 298 F.3d 1059, 1069 (9th Cir. 2002). The party seeking contempt sanctions has the burden of proving, by clear and convincing evidence, that the creditor (1) knew the discharge injunction was applicable and (2) intended the acts that violated the injunction. *ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.),* 450 F.3d 996, 1007 (9th Cir. 2006) (citing *Bennett,* 298 F.3d at 1069). "More specifically, a creditor must have actual knowledge of the discharge injunction, but **need not have any specific intent to violate the injunction**, as simply engaging in a volitional act that does in fact violate the injunction is sufficient to trigger sanctions" (emphasis added) *Perry v. U.S. Bank Nat'l Ass'n),* 03.2 I.B.C.R. 128, 129-30 (Bankr. D. Idaho 2003) (internal citation omitted); *In re Hawley,* 03.2 I.B.C.R. 108, 111, 2003 Bankr. LEXIS 448, 2003 WL 21105074, at *5 (Bankr. D. Idaho 2003); *see also Knupfer v. Lindblade (In re Dyer),* 322 F.3d 1178, 1191 (9th Cir. 2003) (In the civil contempt context, the focus "is not on the subjective beliefs or intent of the contemnors in complying with the order, but whether in fact their conduct complied with the order at issue.") (quoting *Hardy,* 97 F.3d at 1390). Once the debtor makes an adequate showing as to these two elements, the burden shifts to the creditor to demonstrate why it was unable to comply with the discharge injunction. *Perry,* 03.2 I.B.C.R. at 130 (citing *Bennett,* 298 F.3d at 1069).

In a no-asset, no-bar date Chapter 7 case, the failure of the Debtor to properly notice or schedule the creditor has no effect on dischargeability. *In re Beezley,* 994 F.2d 1433, 1435 (9th Cir. 1993). In *Beezley*, the Court wrote, "After a case has been closed, dischargeability is unaffected by scheduling; an amendment of Beezley's schedules [to add the omitted creditor] would thus have been a pointless exercise..." *Id.*

Here, the Respondents clearly committed willful violations of the automatic stay while it operated, and then continued to commit willful violations of the discharge injunction once the discharge order was entered. The Debtor filed an emergency bankruptcy petition on March 18th, 2014 because she was facing a pending garnishment order. In the initial meeting, she made a good faith attempt to list all creditors, although MoneyNow321 was inadvertently omitted. When the Debtor started receiving calls from MoneyNow321 on March 19, 2014, she informed the representative named Cheryl that she had filed bankruptcy and that the calls should cease. That same day, Debtor's Counsel placed an outbound call to a valid MoneyNow321 phone

number and left a voicemail relaying that the Debtor had filed bankruptcy and included both her case number and the Court location where the case was filed. On March 21, 2014 the Debtor again spoke with the same MoneyNow321 representative and again informed the agent that she had filed for bankruptcy. On the same date, the Debtor's Counsel left another voicemail message with MoneyNow321 relaying the Debtor's bankruptcy information. The Debtor's Counsel also sent an e-mail to customerservice@moneynow321.com (the email address listed on the MoneyNow321 website) providing the Debtor's bankruptcy information and explaining the continued calls were a violation of the automatic stay (See EXHIBIT B – email to MoneyNow321). The Debtor's Counsel also sent a fax with identical information to MoneyNow321 at (305) 704-8948, which is the fax number listed on the MoneyNow321 website (See EXHIBIT C – fax confirmation). On March 24, 2014, the Debtor *again* relayed to a MoneyNow321 representative that she had filed bankruptcy. That same day, Debtor's Counsel called MoneyNow321 at (866) 848-2102 and spoke to a female operator who confirmed that the Debtor's internal account with MoneyNow321 did in fact show she was in bankruptcy, but that the Debtor had been left in the auto-dialer inadvertently. The representative advised the calls would now cease as she had corrected the error. The calls, however, did not cease, and instead continued unabated. In the evening of March 24, 2014, the Debtor and her Counsel reviewed and signed the balance of schedules and forms required to complete her bankruptcy case filing. During this meeting an amendment was prepared and signed that formally added MoneyNow321 as a creditor. The MoneyNow321 website states at the bottom of each page, "© Global City Group, LLC. All rights reserved." A search of the Florida Department of State Division of Corporations fictitious business names database shows registration #G13000106871 which provides that "MONEYNOW321.COM" is a registered fictitious business name owned by GLOBAL CITY GROUP, LLC. A search of the Florida Department of State Division of Corporations business entity database provides the following information for Global City Group, LLC:

    Principal Address:      50 Central Ave
                            Suite 950
                            Sarasota, FL 34236

    Mailing Address:        50 Central Ave.
                            Suite 950
                            Sarasota, FL 34236

    Registered Agent Name & Address:      Saslow, David
                                          50 Central Ave.
                                          Suite 950
                                          Sarasota, FL 34236

Global City Group, LLC was listed in the Debtor's Amendment with the address registered for service with the Florida Department of State Division of Corporations (See EXHIBIT D – fictitious business name and business entity search results). The Amendment was filed on March 27th and MoneyNow321 was formally noticed of the Debtor's bankruptcy case (See EXHIBIT A - Amendment). From the date of the amendment through the date this motion was filed, the Respondent has repeatedly received actual notice of the bankruptcy case including multiple verbal notices by the Debtor and an additional letter sent by Debtor's Counsel (See EXHIBIT E – letter to MoneyNow321). The Respondent has been actually aware of the Debtor's bankruptcy case since March 19, 2014 and the Debtor and her Counsel have gone above and beyond to notice the Respondent and warn them that their actions were violations of the automatic stay and the discharge injunction. An agent for the respondent even verbally confirmed that their own system was updated and showed the Debtor as being in bankruptcy. Despite herculean efforts to get the Respondent to comply with the automatic stay by the Debtor and her Counsel, they have all had no effect and the Respondent has repeatedly and willfully continued to aggressively collect from the Debtor in violation of both the automatic stay and the discharge injunction.

The Debtor has received repeated calls both on her cellular phone and at her workplace since the filing of her bankruptcy case. For months the Debtor has dealt with the calls and has been forced to alter her daily routine. The Debtor is the receptionist at her workplace and she is the first person incoming calls are routed to. The law provides that the calls from MoneyNow321 should have ceased since filing and the Debtor has attempted everything possible to get the Respondent to comply with the law. The Respondent's disregard for the law has caused the Debtor significant despair, stress and concern. She has been, and still is, afraid to leave her desk to use the restroom or go to lunch because she is concerned a flurry of calls will come in from MoneyNow321 and her employer will find out and discipline or fire her. The Respondent's conduct in light of the extensive efforts to get the calls to cease was particularly difficult for the Debtor because each time another letter was sent, or a MoneyNow321 representative stated they would stop calling, the Debtor would think it was finally over - just to have the unrelenting collection calls resume once again. The Debtor felt truly hopeless and unable to escape the MoneyNow321 collectors. Many agents have expressed complete disregard for the bankruptcy case and one agent even responded to the Debtor's statement that she filed bankruptcy by telling her she signed a document stating she would not file bankruptcy when she took out the MoneyNow321 loan so the bankruptcy had no effect on the debt. Despite assurances by her Counsel that this was not true, the Debtor doubted that the Debt

could be resolved by the bankruptcy case as the calls continued unabated in the face of her Counsel's repeated assurances that the conduct was unlawful and would cease. The conduct of MoneyNow321 has been truly egregious and has left the Debtor feeling helpless. It has undermined trust in both her Counsel and the Bankruptcy system to be able to provide the relief called for in the Bankruptcy Code. MoneyNow321's conduct has left the Debtor feeling that not even bankruptcy can make them stop collecting from her and they will call and harass her even at work forever until the debt is paid.

### C. CIVIL CONTEMPT REMEDIES:

A bankruptcy court may award damages for a violation of the discharge injunction under the Court's contempt power. *State Bd. of Equalization v. Taxel*, 98 F.3d 1147, at 1152 (9th Cir. 1996). 11 U.S.C §105 authorizes the Court to issue "any order that is necessary or appropriate to carry out the provisions of this title." Damages are a long-recognized sanction for contempt. The purpose of sanctions is to compensate the opposing party for the injuries which arise from the contempt. *Computer Communications Inc. V. Codex Corp.*, 824 F.2d 725 at 731 (9th Cir. 1987); *Crystal Palace Gambling Hall Inc. V. Mark Twain Industries, Inc.* 817 F.2d 1361 at 1366 (9th Cir. 1987). Actual damages are broadly construed to embrace consequential damages and include attorneys' fees incurred in the civil contempt action. *In re Zartun*, 30 B.R. 543 at 546 (B.A.P. 9th Cir. 1983). The contempt need not be willful and there is no good faith exception to violations of the discharge order. *Crystal Palace*, 817 F.2d at 1365; *Petersen v. Highland Music, Inc.*, 140 F.3d 1313 at 1323 (9th Cir. 1998). Punitive damages may also be imposed for a willful violation of 11 U.S.C. §524. The test for willfulness under §524 is the same as that for willful violation of the automatic stay under 11 U.S.C. §362. *In re Novak*, 223 B.R. 363 at 366-367 (Bankr. M.D. Fla. 1997). In the 9th circuit, a "willful violation" does not require a specific intent to violate the automatic stay. *Havelock v. Taxel*, 67 F.3d 187 at 191 (9th Cir. 1995). Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. *Id.* Whether the party believes in good faith that it has the right to [take the action it did] is not relevant to whether the act was 'willful' or whether compensation must be awarded. *Id.*

In this situation, the Respondent repeatedly committed willful violations of the discharge order. As described above and in the supporting declarations by both the Debtor and her Counsel, the Respondent was repeatedly noticed of the bankruptcy case and was actually aware the Debtor filed. Despite efforts by the Debtor

and her Counsel far above and beyond what is called for by the Bankruptcy Code, the Respondent refused to cease collection and to this date continues to call the Debtor in violation of the Discharge injunction. The Respondent's conduct is clearly willful and continues to be done with complete disregard for the law. The Debtor has suffered significant stress, pain and suffering, and fear as a result of the Respondent's conduct. She has been robbed of the fresh start her bankruptcy discharge should have provided.

### D. THE RESPONDENT IS STATUTORILY LIABLE TO THE DEBTOR FOR REPEATED AND WILLFUL VIOLATIONS OF 11 U.S.C. §1692, "THE FAIR DEBT COLLECTION PRACTICES ACT" and/or CAL CIV. CODE §1788-1788.3, "THE ROSENTHAL FAIR DEBT COLLECTIONS PRACTICES ACT"

11 U.S.C. §1692, known as the Fair Debt Collection Practices Act (hereinafter "FDCPA"), provides for legal protections for individuals from abusive debt collection practices. The relevant portions of 11 U.S.C §1692 provide that,

> (a)… a debt collector may not communicate with a consumer in connection with the collection of any debt.
> > (1) at any unusual time or place, or a time or place known or which should be known to be inconvenient to the consumer…
> > (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain such attorney's name and address…
> > (3) at the consumer's place of employment if the debt collector knows or has reason to know that he consumer's employer prohibits the consumer from receiving such communication.
> (c) … If a consumer notifies a debt collector in writing that the consumer refuses to pay a debt or that the consumer wishes the debt collector to cease further communication with the consumer the debt collector shall not communicate further with the consumer…
> (d) A debt collector may not engage in any conduct the natural consequences of which is to harass, oppress, or abuse any person in connection with the collection of a debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> > (5) Causing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass any person at the called number.
> (e) A debt collector may not use any false, deceptive or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> > (2) The false representation of –
> > > (A) the character, amount, or legal status of any debt;
> > (4) The representation or implication that nonpayment of any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action.
> > (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.
> (f) A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
> (1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law

The FDCPA further provides for civil liability for actual damages as well as a provision for attorney's fees and costs, as well as additional damages in the amount of $1,000.00. See 11 U.S.C. §1692(k) and *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 at 1178 (9th Cir. 2006). The Rosenthal Fair Debt Collection Practices Act found in Cal Civ. Code §1788-§1788.3 contains virtually the same provisions. The FDCPA limits its application to "debt collectors" although the Consumer Financial Protection Bureau has recently released two regulatory bulletins clarifying that portions of the Dodd-Frank Act extend some of the prohibitions of the FDCPA to original creditors who engage in unfair, deceptive, or abusive collection practices. *CFPB Bulletin 2013-07, Available at http://files.consumerfinance.gov/f/201307_cfpb_bulletin_unfair-deceptive-abusive-practices.pdf* and *CFPB Bulletin 2013-08, Available at http://files.consumerfinance.gov/f/201307_cfpb_bulletin_collections-consumer-credit.pdf*.

Furthermore, California's Rosenthal Fair Debt Collection Practices Act (hereinafter "RFDCPA") found in Cal Civ Code §1788-§1788.3 contains virtually the same provisions as the FDCPA. An amendment to the RFDCPA passed in 2000 specifically extends the provisions of the FDCPA to anyone conducting collection on California residents stating, "every debt collector [subject to the RFDCPA] shall comply with … Sections 1692(b) to 1692(j), inclusive, of, and shall be subject to the remedies in Section 1692(k) of Title 15 of the United States Code…" Cal Civ Code §1788.17. The RFDCPA and its provisions also apply to the Respondent and they too explicitly apply to original creditors. Although the RFDCPA uses the term "debt collector," it defines "debt collector" as any party that, "in the regular course of business, regularly, on behalf of himself or others, engages in debt collection." Cal Civ Code §1788.2(c) and see *CA State Department of Consumer Affairs Legal Guide DC-2*, June 2003 discussing that the RFDCPA applies to original creditors who engage in collection of their own debts.

      The Respondent's conduct included countless clear violations of both the FDCPA and RFDCPA provisions. The Respondent called the Debtor repeatedly at her place of business despite being made aware that they should not be calling her at her place of employment. The Respondent repeatedly called the Debtor despite knowledge that she was represented by an Attorney and despite being sent multiple legal notices to cease all further contact. The Respondent made repeated, continuous, and harassing calls to the Debtor and engaged in deceptive practices such as having agents unlawfully state to the Debtor that her bankruptcy did not eliminate the Respondent's claim. The Respondent's continued demands for payment and threats of collection enforcement in light of the Debtor's bankruptcy filing were unlawful representations. The Debtor has received bursts of calls and to date has had over 60 calls from the Respondent after all calls should have ceased. Worse, to date the calls from MoneyNow321 have not ceased.

### E. DAMAGES:

      Due to the Respondent's attempts to prosecute and collect on a pre-petition discharged claim, the Debtor has incurred actual damages consisting of mental and emotional distress, nervousness, grief, embarrassment, loss of sleep, anxiety and other injuries. The Respondent has relentlessly hounded the Debtor for payment of a pre-petition claim and agents of the Respondent have expressed complete disregard for her bankruptcy case. Every time her phone rings, the Debtor is filled with fear and anxiety that it may be another harassing call by the Respondent. The Debtor spends her workday actively working to minimize any time away from her desk. She is fearful to even go to the bathroom or take her lunch break as she is concerned a series of MoneyNow321 calls will come through to her employer in her absence and that the repeated harassing calls will get her reprimanded or fired. The Respondent's conduct has made Debtor feel there is no way to ever escape the Respondent's pre-petition claim, especially in light of her repeated statements to MoneyNow321 representatives that she filed bankruptcy and the repeated calls, letters, faxes, and e-mails sent by the Debtor's Counsel. The Debtor has also questioned whether her Counsel can actually get MoneyNow321 to stop collecting from her. Although the Bankruptcy Code mandates that the Respondent cease all active collection, the Respondent's willful disregard for the Court's Orders and authority has caused the Debtor to question whether the calls will

ever cease. The Debtor has felt powerless and helpless and has even questioned whether the bankruptcy discharge order has any real power or effect since the Respondent has completely disregarded the requirements to cease collection set forth in the Bankruptcy Code.

The Debtor and her Counsel have expended significant time and energy attempting to have the Respondent comply with the automatic stay and later the discharge injunction. The Debtor has had countless verbal interactions with the employees of the Respondents, all to no avail. The Debtor's Counsel also has discussed the issue with agents of the Respondent by phone and has sent further notice by email, fax, and mail, all without getting any resolution from the Respondents. The Respondents' actions were particularly egregious in light of their affirmative duty to cease all collection of the pre-petition claim under 11 U.S.C. 524 and 523(a)(16).

Debtor has incurred actual damages consisting of attorney fees and costs. Attached hereto is a Declaration of Debtor's Counsel with an attached breakdown of attorney's fees and costs (See EXHIBIT H – Declaration of Debtor's Counsel Regarding Fees and Costs and Attached Breakdown of Time and Costs). Debtor is entitled to attorneys' fees and costs on multiple grounds. 11 U.S.C. §362, §105, the FDCPA and RFDCPA all provide for liability for the full amount of the Debtor's Attorney's Fees and Costs.

Debtor is entitled to additional damages of $2,000.00 for Respondent's violations of the FDCPA and RFDCPA which each provide for up to $1,000.00 in additional damages for violation.

Despite efforts by the Debtor and her Counsel to repeatedly get the Respondent to comply with the law and cease collection, the Respondent has willfully and completely ignored this Court's power and defied the automatic stay and later the discharge order with relentless harassing collection calls to the Debtor on her cellular phone and at her workplace. Given the particularly egregious conduct of the Respondent including agents who have actively stated that the bankruptcy filing had no effect on the underlying debt, punitive damages are appropriate to compensate the Debtor and to dissuade the Respondent from ongoing willful violations of the automatic stay and discharge order.

### III. CONCLUSION

WHEREFORE, for the reasons stated above the Debtor respectfully requests this Court enter an order for the following:

A. Compensatory damages in the form of sanctions pursuant to 11 U.S.C. §362, §105, and 11 U.S.C. §524, respectively, sufficient to compensate the Debtors for damages including but not limited to:

  1. Compensation of $30,000.00 in actual damages for the anxiety, stress, and fear suffered by the Debtor because of Respondent's relentless, unlawful collection calls in the amount of $500.00 per phone call made in violation of the automatic stay, and later, the discharge order.  Debtor has received over 60 harassing calls in violation of the automatic stay, discharge order and/or FDCPA/RFDCPA.

  2. Compensation of $5,000.00 in actual damages for the Debtor's lost time and costs spent trying to resolve the Respondent's ongoing violation of the automatic stay and later, the discharge order.

  3. Compensation for attorney's fees and costs of $10,736.65 (See EXHIBIT H – Declaration of Debtor's Counsel Regarding Fees and Costs and Attached Breakdown of Time and Costs).

  4. Punitive damages in the form of a "coercive fine" of $20,000. for Respondent's willful, reckless, and egregious conduct.

B. Additional damages of $2,000.00 total as follows: $1,000.00 for additional damages provided by the FDCPA for violative conduct and $1,000.00 for additional damages provided by the RFDCPA.

C. Such other and further relief as the Court may deem just and proper.

Dated: October 7, 2014

/s/ Brett F. Bodie
Brett F. Bodie
Bankruptcy Law Center, APC
Attorney for Debtor